NORTHWEST EQUIPMENT SALES CO.,
a Washington Corporation,
Plaintiff-Appellant,

v.

WESTERN PACKERS, INC., an Idaho
Corporation, et al.,
Defendants-Appellees.

No. 75–1162.

United States Court of Appeals,
Ninth Circuit.

Sept. 21, 1976.

William F. Almon (argued), of Halverson, Applegate, McDonald, Bond, Grahn, Wiehl and Almon, Yakima, Wash., for plaintiff-appellant.

Paul L. Westberg, Asst. U.S. Atty. (argued), Boise, Idaho, E. C. Rood (argued), Emmett, Idaho, for defendants-appellees.

OPINION

Before MERRILL, TRASK, and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Competing security interests in the same collateral are involved in this case. The action was originally brought in an Idaho court, but was removed to the federal district court pursuant to 28 U.S.C. §§ 1441(a) and 1444, federal jurisdiction being based on 28 U.S.C. §§ 1332 and 2410. The action is controlled by Idaho law. Northwest Equipment Sales Company (Northwest) appeals from an adverse judgment of the district court. We vacate and remand.

*Background*

In July 1969 Northwest sold various items of machinery, collectively referred to as a fruit packing line, to Orchards, Inc. (Orchards) and retained a security interest therein to assure payment of the agreed purchase price of $22,765.93. On September 24, 1969, the machinery was affixed to real property owned by George and Goldie Yost (the Yosts). The Yosts executed a contract to sell the real property to Cold House, Inc. (Cold House) on September 25, 1969. Cold House and Orchards were affiliates in the fruit business and had interlocking boards of directors and corporate officers. Cold House and Orchards "set up" Gem County Development Company (Gem) to build the fruit packing plant. In October

1969, Cold House made two mortgages on the real property, with the fixtures, one to First Security Bank of Idaho, and the other to Gem. The Bank and Gem in turn assigned the mortgages to the Small Business Administration (the S.B.A.).

Payment to Northwest for the machinery was never made. Western Packers, Inc. (Western) entered into possession of the fruit packing plant by arrangement with Cold House during the winter of 1971–72. Western agreed to rent the machinery from Northwest and paid $200 of a stipulated $2,000 rental pending an agreement under which Western was to purchase the machinery. Before the Western-Northwest rental agreement was carried out, Cold House defaulted on its obligations under the mortgages. The S.B.A. foreclosed on the mortgages and sold the machinery to Western in a private sale pursuant to Uniform Commercial Code default provisions, as adopted in the Idaho Code. Northwest brought suit against both the S.B.A. and Western, alleging a priority interest in the machinery.

At trial, the S.B.A. claimed both an interest in the real property and an interest in the machinery affixed to it. Western claimed to have taken the S.B.A.'s interest as a subsequent purchaser for value without knowledge. The trial court found that neither Northwest nor the S.B.A. had perfected their respective security interests in the fixture. Thus, Idaho Code §§ 28–9–313(2) and (4) were found by the district court to be controlling. These provisions govern the priorities between a security interest in the machinery and an interest in the real estate to which the machinery became affixed when the security interest in the machinery attached before the machinery became affixed.

Judgment was entered in favor of the S.B.A. and Western. In so ruling, the district court relied on one or both of two separate theories, each of which might be supportable under the above-cited provisions of the Idaho Code. The S.B.A. and Western may have prevailed as subsequent purchasers for value without knowledge of the Northwest security interest or they may have come under the successors-in-interest clause of § 28–9–313(2) to be discussed below. We are unable to sustain the judgment on either theory, so we vacate the judgment and remand the case for further proceedings.

### Subsequent Purchaser for Value

The rule is that a subsequent purchaser for value of any interest in real estate will prevail over a party having a prior security interest in a fixture attached to the real estate if the subsequent purchase is made or contracted for without knowledge of the security interest and before it is perfected. This rule is embodied in Idaho Code § 28–9–313(4) and does not differ from the Uniform Commercial Code provision.[1]

Under this statute, Western qualifies as a subsequent purchaser because it purchased the realty at a foreclosure sale other than its own. This, however, does not mean that Western was necessarily a subsequent purchaser without knowledge. The district court made no finding of fact as to whether Western had actual knowledge of the Northwest security interest. It appears, moreover, that Western, on its own version of the facts, had agreed to pay rent to Northwest for use of the machinery, thus implying actual knowledge on its part.

The district court characterized the S.B.A. as a subsequent purchaser for value,

---

1. Idaho Code § 28–9–313(4) provides:

    (4) The security interests described in subsection (2) and (3) do not take priority over (a) a subsequent purchaser for value of any interest in the real estate; or (b) a creditor with a lien on the real estate subsequently obtained by judicial proceedings; or (c) a creditor with a prior encumbrance of record on the real estate to the extent that he make subsequent advances

    if the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected. A purchaser of the real estate at a foreclosure sale other than an encumbrancer purchasing at his own foreclosure sale is a subsequent purchaser within this section.

but made no specific finding as to lack of actual knowledge on the part of the S.B.A. either. There is evidence that S.B.A.'s representative, Bert Mitchell, was informed that Cold House intended to acquire machinery from Northwest and that the S.B.A. was being kept apprised of the details of the fruit packing venture since before the machinery was delivered in September 1969. Though not conclusive as to S.B.A.'s actual knowledge, this evidence prevents us from assuming, in the absence of a finding by the district court, that the S.B.A. was without actual knowledge of the outstanding security interest held by Northwest in the machinery.

The district court may have assumed that lack of knowledge on the part of the S.B.A.'s predecessors in interest was sufficient to fulfill the requirement of lack of knowledge under the Idaho statute. Though it did not explicitly so hold, the court's only finding as to knowledge was that "[t]here was no oral evidence which would indicate that the original mortgagees had any knowledge of a prior security interest in the fruit packing line." [2] The "original mortgagees" are the Bank and Gem, which were the S.B.A.'s direct predecessors. At least in the case of Gem, this conclusion is factually questionable. Under direct examination, Robert Ames, who was president of Orchards, vice president of Cold House, and a director of both, testified that Gem was "set up" by Orchards and Cold House to build the fruit packing plant. While "set up" is not precise language, nonetheless, both Orchards and Cold House knew of the Northwest security interest, and Gem being

but another branch of the same tree, knowledge could be imputed to it as well. We do not state this as our finding of fact, or necessarily indicate that a contrary finding by the district court could not be sustained, but we cannot accept a finding that there is "no evidence" of any such knowledge.

Even were there a stronger factual foundation, we would not make the assumption of law that the predecessors' lack of knowledge fulfills the statutory requirement for the S.B.A. and Western. Priority is granted to a subsequent purchaser for value under the language of § 28–9–313(4) only if the purchase is made "without knowledge of the security interest." Idaho Code § 28–1–201(25) provides that "a person 'knows' or 'has knowledge' of a fact when he has actual knowledge." It would seem, then, that the S.B.A. and Western could not qualify for priority treatment as subsequent purchasers for value if they had actual knowledge of Northwest's security interest at the times of their assignments. Absent specific findings of fact that they did not possess such knowledge, and given the existence of evidence indicating that they did, we cannot sustain the judgment of the district court on subsequent purchasers for value provision of the Idaho Code.

### Successors in Interest

An alternative ground for upholding the district court's decision may exist by virtue of the unique successors in interest provision of Idaho Code § 28–9–313(2).[3] Under this statute, parties who have an interest in realty at the time goods become affixed to it may defeat a security interest in the

**2.** We are not aware of any special significance in the use of the term "no *oral* evidence" (emphasis added).

**3.** Idaho Code § 28–9–313(2) provides:
(2) A security interest which attaches to goods before they become fixtures shall become invalid after the goods become affixed, as against any person having an interest in the real estate at the time the goods become affixed who has not expressly consented in writing to the preservation of the security interest or disclaimed in writing any interest in the goods as fixtures; provided, however, that such security interest is valid against all

persons subsequently acquiring an interest in the real estate except as stated in subsection (4) and except as against a successor in interest to such person having an interest in the real estate at the time the goods became affixed.
In contrast, the Uniform Commercial Code § 9–313(2) states:
A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

goods by withholding written consent to the preservation of the security interest. The Idaho provision further modifies the U.C.C. by adding a final clause which seemingly provides that a security interest in a fixture may also be defeated by a "successor in interest to such person having an interest in the real estate at the time the goods became affixed."

The district court noted that the record owners of the real estate at the time the goods became affixed were the Yosts because the Yosts did not formally convey the property to Cold House until September 25, one day after the affixation of the machinery. The S.B.A. and Western might claim a priority interest in the fruit packing line as successors in interest to the record title holders of the realty from whom no written consent to the preservation of the Northwest security interest was obtained since the Yosts gave no written consent. We believe, however, that at least on the present record the argument is without merit.

The Idaho version of subsection (2) is not easily understood, and the district court offered no interpretation or explanation. Since the Yosts have never asserted an interest in the fixture, attention should be focused on that part of the statute which deals with successors in interest. After identifying the security interest as one attaching to goods before they become fixtures, subsection (2) states:

> [S]uch security interest is valid against all persons subsequently acquiring an interest in the real estate . . . except as against a successor in interest to such person having an interest in the real estate at the time the goods become affixed.

This provision is difficult to render unambiguous since the exception—a successor in interest—appears to swallow the initial category of persons against whom the interest is deemed valid—all persons subsequently acquiring an interest in the real estate. Only if the exception is read narrowly, as if to cover only the immediate successor in interest, for instance, can both provisions

meaningfully be interpreted and utilized. If the exception is read in some narrow manner, then the S.B.A. and Western might not qualify as successors in interest. No legislative history has been found to explain the intent behind the Idaho provision. We will not ourselves adopt a view of the exception so broad as to render a significant part of the statute meaningless without a compelling explanation.

Moreover, if the entire set of transactions is viewed realistically, the fixture here was not attached without the landowner's consent, so this subsection of the code should not apply in the first place. That the Yosts were the title holders on the date the fixture attached was happenstance, for they formally conveyed the property the next day, as obviously they had previously planned. The Yosts never asserted a claim to the fixture, nor did they ever purport to convey any interest therein. Nor is there any doubt that Cold House agreed to the machinery being affixed to the real estate. It is true that Orchards signed the Northwest purchasing agreement, thus contracting for and consenting to the affixation, although Cold House was the record purchaser of the property from the Yosts. But Cold House and Orchards were operating, for practical purposes, as a single entity, and surely Orchards had authority as Cold House's agent. To grant S.B.A. and Western priority under the successor-in-interest provision would seem to exalt form over reality.

It does not appear that the district court intended to rely on this argument to support its decision, nor do the S.B.A. and Western specifically argue these grounds to us. Under the circumstances, we cannot affirm the judgment for the S.B.A. and Western on this theory.

Since we cannot, under either theory, sustain the district court's judgment on the basis of its own explicit findings of fact and conclusions of law, or reconcile its possibly implicit holdings with the facts as presented to us in the record and with our own reading of the Idaho Code, we vacate the judg-

ment and remand the case to the district court.

Vacated and remanded.