[No. 46472. En Banc. May 29, 1980.]

VERNON PAUL KITT, *Petitioner, v.* YAKIMA COUNTY, *Respondent.*

*Brooks & Larson, Terry A. Brooks,* and *Terry P. Abeyta,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney, John Gavin, Special Deputy,* and *James E. Davis, Deputy,* for respondent.

HOROWITZ, J.—This case arose as a tort action for damages sustained by the plaintiff in an automobile collision which occurred at an obscured intersection in Yakima County. The plaintiff alleged that the county had negligently signed[1] the intersection. We reverse the Court of Appeals, Division Three, and reinstate the judgment for the plaintiff against the County because the trial court was correct in ruling that the County was negligent as a matter of law in its manner of signing the intersection.

I

Plaintiff Vernon Kitt and Dale Stanton, against whom plaintiff dismissed his claim before this action came to trial, collided at an uncontrolled intersection in rural Yakima County on June 22, 1976. The speed limit on both roads which crossed at the intersection was 50 miles per hour; both drivers were traveling at 30 to 35 miles per hour at the time of the accident, which occurred at dusk on a rainy afternoon. Mr. Kitt was on the left in the collision and thus was the statutorily disfavored driver. RCW 46.61.180(1). The view of both drivers was obstructed by orchards at the crossing.

---

[1] "Sign . . . *vb* . . . 6: to place signs on or along . . . a highway intersection . . ." *Webster's Third New International Dictionary* (1966).

All four approaches to the accident intersection were signed by defendant Yakima County with crossroad signs, a yellow diamond with a black "plus" sign which indicates an intersection. Plaintiff indicated that he was unfamiliar with the intersection and that the sign indicated to him that he had the right-of-way. He further testified that he had seen the sign elsewhere in Yakima County, but always on through highways.

Employees of the County testified that crossroad signs were used on many intersections such as the one at which plaintiff's and Mr. Stanton's vehicles had collided. However, on cross-examination, the County's witnesses were unable to identify any other specific intersection signed with a crossroad sign on all four approaches, such as were used at the accident site.

The trial court found the signing to be negligent as a matter of law on the basis of its interpretation of the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD), which was adopted as modified by the State Highway Commission in 1972, pursuant to RCW 36.86.040. WAC 252-990. The case was submitted to the jury with instructions on the issues of proximate cause and comparative negligence. The jury found the county to be liable and found that plaintiff was one-third responsible for the accident. Damages of $52,061.46, two-thirds of plaintiff's total damages, were assessed against the defendant.

On a motion for new trial, the defendant submitted an affidavit from one juror, a member of the 10-to-2 majority. The affidavit stated that the jurors had misunderstood the instructions and that the jury had intended to hold the County liable only for $26,000 of the plaintiff's damages. An affidavit submitted by the jury forewoman, however, asserted that the jurors had understood the instructions and that the judgment as entered properly reflected the jury's verdict. The trial court denied the motion for a new trial.

The Court of Appeals reversed the trial court's finding that the County was negligent as a matter of law in failing

to follow MUTCD "recommendations." It remanded the case for trial on the issue of the County's negligence. The appellate court found the standards for use of the crossroad sign to be directory rather than mandatory. It further held that the use of the sign on the accident intersection was a matter of "engineering judgment" subject to a jury determination of negligence.

Plaintiff petitioned for review of the Court of Appeals decision that the County was not negligent as a matter of law, contending that the decision was in conflict with an opinion of this court. *Schneider v. Yakima County,* 65 Wn.2d 352, 397 P.2d 411 (1964). Review was granted.

The defendant has not cross–petitioned for review of the Court of Appeals decision that the jury verdict was not impaired by the affidavit alleging that the jury misunderstood the instructions given by the court. Nor did the defendant file a cross petition for review in this court of the allegedly argumentative and prejudicial charge to the jury, an issue that was raised on appeal but not explicitly addressed in the Court of Appeals opinion. RAP 13.7(b). Those issues are therefore not further dealt with in this opinion.

However, defendant County did object to plaintiff's insertion of an opinion letter from the United States Department of Transportation in his petition for review. Defendant made a formal motion in its answer to the petition for review requesting that the letter, which was not considered at trial, be struck from the record. We do not reach the defendant's motion to strike because we find that, as a matter of law, for the reasons stated below, the defendant County was negligent without regard to any such evidence.

II

In *Schneider v. Yakima County, supra,* this court held "the County was negligent, as a matter of law, for its failure to conform to the uniform state standards [of the MUTCD]." *Schneider v. Yakima County, supra* at 357. In

that case, the County, at an inadequate distance from the hazard, had signed with a reverse curve sign a bend in the road so sharp that it required a reverse turn sign, a marker that represents a much more radical change in road direction. A 1-car accident at the site had killed one teenager and seriously injured four others; the parents of the occupants of the automobile sued the County for negligent signing. In declaring the County's admitted failure to conform with uniform standards in the MUTCD to be negligent as a matter of law, this court stated that the "necessity for a requirement of uniformity in color, design, manner of erection and location in a state having 39 counties seems obvious." *Schneider v. Yakima County, supra* at 356.

Plaintiff contends that the Court of Appeals refusal to affirm the trial court's holding that the county was negligent as a matter of law for failure to conform with MUTCD standards is contrary to the holding of *Schneider*. We agree with the plaintiff. The Court of Appeals erroneously interpreted the guidelines for use of the crossroad sign to allow use of the sign in circumstances other than those for which it is specifically prescribed.

The MUTCD provides the following guidelines for use of the crossroad sign:

> The Cross Road sign is intended for use on a through highway to indicate the presence of an obscured crossroad intersection.

MUTCD § 2C–10. A "through highway" is defined at MUTCD § 8A–2–18 as a highway "on which vehicular traffic is given preferential right–of–way". Since both roads crossing at the accident intersection could not have "preferential right–of–way," using crossroad signs on both roads violated the provisions of MUTCD § 2C–10.

The Court of Appeals relied, however, on the definition of "intended for use," added to the Manual when it was adopted by the State, in holding that the guidelines did not prohibit the use of crossroad signs on roads other than through highways. MUTCD § 1A–4, as modified, defines "intended for use" as:

An *advisory* condition. Where the words "intended for use" are used, it is considered to be advisable usage, recommended but not mandatory.

Reasoning that the definition of the phrase "intended for use" made sign uses described by it nondirectory, the Court of Appeals held that the County in its "engineering judgment" could have determined that the crossroad sign was necessary on a road other than a through highway, *e.g.,* on the two intersecting roads at which the accident occurred.

We believe the Court of Appeals interpreted the non-directory nature of the phrase "intended for use" too broadly. A careful reading of the manual provisions reveals that although the County may exercise engineering judgment in determining whether to sign a particular hazard, or in deciding which of a number of prescribed devices shall be used to sign a particular hazard, there is no judgment to be exercised in determining what particular hazard can be signed in a particular way.

The standard signs of the MUTCD are to be used in just that way—as standard signals of particular hazards. "Each standard sign *shall* be displayed only for the specific purpose prescribed for it in this Manual." MUTCD § 2A–4. (Italics ours.) "Shall" is a "*mandatory* condition." MUTCD § 1A–4. This restriction on the use of standard signs is, indeed, reflected in the definition of "intended for use," which states that the usage is advisable, but "not mandatory." If a sign is prescribed for a certain hazard, but need not always be used at every hazard that could be so signed, its *use* is "recommended but not mandatory" and thus falls within the definition of "intended for use."

The fact that a use is not required in those circumstances where it is appropriate does not prevent prohibition of the use of the sign in circumstances where it is not appropriate under MUTCD standards. In other words, the crossroad sign may be used on a through highway, although in its engineering judgment the County might choose not to sign every through highway with a crossroad sign at every obscured intersection. However, the use of the crossroad

sign at any *other* type of intersection—*e.g.,* on all four approaches to an obscured intersection—is prohibited, since both intersection roads cannot be through highways. MUTCD §§ 2C–10, 8A–2–18.

Only by interpreting the manual provisions in this manner, to allow the County to exercise judgment in determining whether to sign and which of a number of prescribed signals to use, but to preclude the County from using a sign for any but its prescribed use, can the uniformity underlying this court's decision in *Schneider* be achieved. Overreliance on the "advisory" nature of "intended for use" is not warranted. As pointed out by the plaintiff, the manual states that stop signs are merely "intended for use on roadways where traffic is required to stop." MUTCD § 2B–4. Regardless of the use of the nondirectory language, the decision to use a stop sign elsewhere for a different purpose could not be considered a matter of "engineering judgment." The phrase merely acknowledges that other devices, such as a stoplight, a barrier, or an individual directing traffic, could be used in lieu of a stop sign to require traffic to stop. *See* MUTCD §§ 4B–5–3a, –4a; 6C–7, 6E–4.

The need for signing uniformity prevents the use of a sign, prescribed for a specific hazard, in other circumstances, even though the county might not be negligent for not signing the inappropriately marked hazard had it in its engineering judgment determined that no warning was necessary. We therefore must reverse the Court of Appeals and reinstate the judgment against defendant on the jury verdict for the plaintiff.

It is so ordered.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and SHIELDS, J. Pro Tem., concur.