[No. 46824. En Banc. October 30, 1980.]

COURTRIGHT CATTLE COMPANY, *Respondent,* v. THE DOLSEN COMPANY, *Respondent,* JOHN B. COTTEN, ET AL, *Petitioners.*

*Daniel P. Pepple* and *Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* for petitioners.

*John S. Moore* and *Velikanje, Moore & Shore, Inc., P.S.,* for respondent Dolsen Co.

*Charles T. Schillberg* and *Schillberg, Sorlien & Warring,* for respondent Courtright Cattle Co.

HOROWITZ, J.—This case concerns the ownership of a large piece of equipment called a "clarifier" in a potato processing plant in Warden, Washington. Plaintiff Courtright Cattle Company (Courtright) first leased, and then exercised an option to purchase, the clarifier from defendant The Dolsen Company (Dolsen). In the meantime, defendant John Cotten had purportedly purchased the potato processing plant, including the clarifier, from the Small Business Administration (SBA). Both the SBA and Dolsen traced title to Warden Leasing (Warden), which is now bankrupt.

Courtright began this action against Dolsen and Cotten to clear title to the clarifier against Cotten, or, in the alternative, to receive a money judgment against Dolsen for failure to protect Courtright's interests in the clarifier. The trial court found that Cotten owned the clarifier and awarded damages in the amount of $27,957 to Courtright against Dolsen for Dolsen's failure to deliver good title. On appeal by Dolsen, the Court of Appeals reversed, holding that Dolsen had no duty or opportunity to record its personal property interest in the clarifier and that Warden

could not have passed any ownership interest to Cotten through the SBA.

We now reverse the Court of Appeals because the lease between Courtright and Dolsen in law created a security interest under the Uniform Commercial Code in the clarifier. In order to protect the interests of Courtright and Dolsen against Cotten, who was a subsequent purchaser for value of interest in the real estate to which the clarifier was affixed, a financing statement should have been filed, or if not, the real property interest should have been recorded. We remand the case to the Court of Appeals for a review of the trial court's ruling that Dolsen was liable for damages suffered by Courtright because of Dolsen's failure to protect Courtright's interests in the clarifier.

A review of the facts is necessary before we discuss the issues raised by this case.

I

Warden owned a potato processing plant in Warden, Washington. In late 1971 or early 1972, Warden purchased and placed on the Warden plant property a clarifier, a piece of equipment which treats waste from the potato processing plant. The clarifier is a steel tank approximately 24 feet in diameter and connected by pipes to the processing plant itself. It is embedded in a concrete slab 6 inches deep around the circumference and 2 1/2 feet deep in the center. The plant cannot be operated without the clarifier. There appears to be no ready market for used clarifiers and removal of the equipment would cause substantial damage to the clarifier and to the real property to which it is affixed.

Warden leased the potato processing plant, including the clarifier, to Country Spuds, Inc. (Spuds). In late 1972, Warden, apparently short of funds and unable to pay the $25,000 clarifier purchase price, proposed that Spuds find a purchaser for the clarifier who would agree to lease the clarifier back to Spuds. Spuds then asked Courtright to purchase the clarifier and lease it back to Spuds. Spuds

proposed to pay "rent" to Courtright in the form of potato waste from the clarifier. Potato waste could be used as cattle feed by Courtright. Courtright was unable to finance such a transaction, and so approached Dolsen, which agreed to purchase the clarifier and lease it to Courtright. Dolsen had in the past purchased and leased other pieces of equipment to Courtright.

On November 9, 1972, Dolsen and Courtright executed a personal property form lease of the clarifier. The lease ran for 60 months with a monthly rent of $550 and contained an option for Courtright to purchase the clarifier at term's end for $2,500. The lease recited this amount as the estimated value of the clarifier in 5 years; the parties to the lease testified that in 1972 they believed that the clarifier's value in 1977 would be $2,500. Under the lease, Courtright assumed full responsibility for injury, damage, or destruction of the clarifier and agreed to pay all taxes assessed against it.

On November 10, 1972, Spuds sent Warden a check for $25,000. No bill of sale or letter accompanied the check, but it is uncontroverted that the instrument was payment for the clarifier. On the same day, an invoice from Spuds purported to ship and sell the clarifier to Dolsen. No other writing memorialized this transaction. The clarifier was not, and could not be, shipped, but remained attached to the potato processing plant.

On November 13, 1972, Dolsen paid Spuds $25,000 for the clarifier.

By oral agreement, the date of which is not established, Spuds agreed to supply Courtright with potato waste in return for Courtright's payments on the 5–year lease. At the end of the term, Courtright and Spuds agreed that Spuds would buy the clarifier from Courtright for $2,500. There is no evidence that Dolsen knew of Courtright's oral agreement with Spuds.

None of the transactions set forth above was recorded. Employees of Dolsen testified that they did not believe that a financing statement should have been filed on the lease

between Dolsen and Courtright. The owner of Courtright testified that he believed that Dolsen had undertaken the necessary paper work with regard to the purchase and lease of the clarifier. The trial court found in its finding of fact No. 13 that Dolsen "drew the legal papers and undertook and assumed the responsibility of legally protecting title to the clarifier and delivering good legal title to the clarifier after all lease payments had been made and the option price had been paid."

In 1973 Spuds went bankrupt. Courtright continued to make its monthly payments to Dolsen and to pay taxes on the clarifier even though it had received only 4 months' potato waste before Spuds went out of business. Courtright did not inform Dolsen of Spuds' insolvency.

In 1974 Warden went bankrupt. The Small Business Administration had guaranteed payments on the Country Spuds lease to Warden, and to recoup its losses the SBA had Warden deed and convey all its real and personal property to the agency. The SBA searched available records for potential third party interests in Warden's assets. The SBA had no actual knowledge of any ownership interest in the clarifier claimed by Dolsen or Courtright.

In 1975 the SBA sold the potato processing plant to Cotten. The transaction was effected by a deed of all real property and a bill of sale that included the clarifier. Cotten had made an appropriate search of all available records and discovered no notice of Courtright's or Dolsen's interests in the equipment. Cotten subsequently took possession of the plant and leased it to a potato processing firm.

Courtright continued to make payments on the lease to Dolsen. It did not inform Dolsen that it was receiving no potato waste. However, it is clear that by 1976 Dolsen was aware of the Spuds and Warden bankruptcies. In November 1977, Courtright in response to a letter from Dolsen, exercised the purchase option and tendered $2,500

to Dolsen in final payment for the clarifier.

Cotten has refused to honor the oral agreement that Courtright had made with Spuds and, although the plant has been in operation since 1975, Courtright has received no more potato waste under its agreement with Spuds.

Courtright began this action in Grant County Superior Court against Dolsen and Cotten. At trial, there was testimony that the value of the clarifier at the end of the lease term was $33,900, not $2,500 as agreed by Courtright and Dolsen. There was no evidence that Cotten was aware of the claims of Dolsen or Courtright to the clarifier at the time he purchased the plant.

The trial judge, acting without a jury, held that Cotten owned the clarifier and awarded damages to Courtright against Dolsen. The trial court held that Courtright and Dolsen were estopped from claiming title against Cotten because of their failure to provide constructive notice of their interests in the clarifier.

Dolsen appealed both the holding regarding ownership of the clarifier and the award of damages to the Court of Appeals, Division Three. That court reversed, stating that the clarifier would be considered personal property and that the Dolsen/Courtright lease must be treated as a pure lease, and not as a security agreement governed by the Uniform Commercial Code. It found for Courtright and Dolsen against Cotten, and thus did not consider the question of the correctness of the trial court's award of damages against Dolsen.

Cotten petitioned for review of the Court of Appeals decision in this court. Review was granted. This court thus must determine whether Cotten or Dolsen/Courtright are entitled to ownership of the clarifier. That question depends first on whether Cotten could have any rights in the clarifier, and then on whether Dolsen/Courtright could have protected their prior interests in the clarifier against the claims of third parties.

## II

### INTERESTS OF PARTIES IN THE CLARIFIER

Dolsen[1] first asserts that Cotten can have no interest in the clarifier because, at the time of the purported sale by Warden to the SBA, Warden no longer "owned" the clarifier, having earlier sold it to Country Spuds, who in turn sold the equipment to Dolsen. Dolsen argues that because Warden did not have title, Cotten, who claims through the SBA, could not have acquired any rights to the clarifier.

Cotten attempts to meet this argument through reliance on former RCW 63.04.260, section 25 of the uniform sales act, which provided:

> Where a person having sold goods continues in possession of the goods . . . the delivery or transfer by that person . . . of the goods . . . under any sale . . . to any person receiving and paying value for the same in good faith and without notice . . . shall have the same effect as if the person making the delivery or transfer were expressly authorized. . . .

Laws of 1925, 1st Ex. Sess., ch. 142, § 25. Arguing that Warden "continued in possession" of the clarifier, Cotten asserts that he, through the SBA, was a good faith purchaser and thus should own the goods as if the sale were "expressly authorized" by Dolsen.

Although the enactment of the U.C.C. left intact general uncontradicted principles of prior sales law, *see* RCW 62A.1–103; Official Comment 1, RCWA 62A.2–403, the type of fraudulent "sales" by those entrusted with goods which were originally covered by RCW 63.04.260 are now governed by the provisions of RCW 62A.2–403(2). Section .2–403(2) expressly limits the passage of ownership interest to those circumstances in which the purported vendor was a merchant:

> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to

---

[1]Henceforth, in considering the interests of Cotten against Dolsen and Courtright, the term "Dolsen" will be used to refer to Dolsen and Courtright, both of which claim through Country Spuds.

transfer all rights of the entruster to a buyer in ordinary course of business.

Since neither Warden nor the SBA was a "merchant," RCW 62A.2–104, nor was Cotten or the SBA a "buyer in the ordinary course of business," RCW 62A.1–201(9), it is clear that RCW 62A.2–403(2) will not preserve Cotten's interest.

Even were former RCW 63.04.260 still applicable in light of the much more restrictive provisions of the U.C.C., *see* Official Comment 3, RCWA 62A.2–104, Warden did not "retain possession" of the clarifier, which was under the control of its lessee Spuds at the time of the transfer to Dolsen. Warden merely *regained* possession of the clarifier when Spuds went bankrupt.

■ The parties' emphasis on these theories is, at any rate, misplaced. Warden may not have had "title" to the clarifier at the time of the transfer to the SBA, but because of the U.C.C.'s deemphasis of the concept of title in the acquisition of ownership interest, Cotten still may have established a justiciable right in the equipment. He was a purchaser for value and without notice of Dolsen's earlier claims. Nothing in the code suggests that a "purchaser" or "buyer" can acquire ownership rights *only* from one who himself has perfect title. *See* RCW 62A.1–201(9), (33).

Thus, although Cotten can no longer assert the protection of RCW 63.04.260, this does not end the inquiry into his interests in the clarifier. As next appears, an examination of the character of the clarifier and of the lease agreement makes it clear that the rights asserted by Cotten must be considered superior to the interests of Dolsen of which Cotten could have had no notice.

### III
### PRIORITIES OF INTERESTS IN THE CLARIFIER

Cotten's superior ownership right in the clarifier arises from Dolsen's failure to give notice of its interest in the equipment. Dolsen argues, however, that because state law

makes no provision for recording or filing the lease of personal property, its failure to give notice cannot prejudice Dolsen's ownership interests.

Dolsen first contends that the clarifier must be considered as personal property because it was treated as such by the parties during relevant transactions.

Dolsen cites the bills of sale between Warden and the SBA and between the SBA and Cotten, which recite the clarifier as one of the items of personal property being transferred. It is true that parties may by agreement determine between or among themselves that an item is to be treated as personalty even though as to third parties it might otherwise be classified as a fixture. However, these agreements are generally explicit, *see Babson Credit Plan, Inc. v. Cordele Prod. Credit Ass'n,* 146 Ga. App. 266, 246 S.E.2d 1354 (1978), and the significance of inclusion of the clarifier on the bill of sale must be lessened by the fact that the real estate to which the clarifier was attached was being deeded in the same transaction. The entire plant was being sold, and the large, obviously affixed item may have been added to the bill of sale in an exercise of caution to insure that everything in and attached to the plant would be passed to the purchaser in the transaction.

If the clarifier were to be construed as personal property, however, the Court of Appeals was correct in noting that there is no provision in the law of Washington for recording such a document and thus Cotten would have no claim to the property based on Dolsen's failure to give him constructive notice of interest in the clarifier. The Court of Appeals cited *Swanson v. White,* 83 Wn.2d 175, 181, 517 P.2d 959 (1973):

> [A] conditional vendor is given a means of protecting his interest—he can file his contract. . . . But a lessor is afforded no such protection. We are unable to discover any statute which provides for the filing of a lease as a means of protecting the interest of the lessor.

Thus, if no statute gives an unknowing subsequent purchaser protection against unrecorded prior claims, Cotten

has no rights in the personal property, which was subject to a prior lease with option to purchase.

## A
### LEASE AS SECURITY AGREEMENT

*Swanson v. White, supra,* is distinguishable from the instant case. There was no question in *Swanson* that the lease was actually a rental agreement, in which the property leased was to be returned absolutely at the end of the term. The lease in this case is instead a disguised security agreement to finance purchase of a fixture, and Dolsen's interest was unperfected and subordinate to the claims of the subsequent purchaser Cotten.

■■ Although the courts of this state have never considered a case in which a lease was used as a security agreement, the use of this type of financing arrangement is widespread. It is provided for by article 9 of the U.C.C. and has been considered in other jurisdictions.

RCW 62A.9–102(2) states that article 9 applies to leases intended as security. RCW 62A.1–201(37)(b) provides that "an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." In this case, Courtright could, and did, purchase the clarifier for less than 10 percent of its market value at the end of the 5–year lease. Other courts have stated that amounts up to 25 percent should be considered "nominal" in determining whether a lease was intended by the parties as a security agreement. *In re Alpha Creamery Co.,* 4 U.C.C. Rep. Serv. 794 (W.D. Mich. 1967); *In re Oak Mfg., Inc.,* 6 U.C.C. Rep. Serv. 1273 (S.D.N.Y. 1969). Thus, the small option purchase price was a "nominal consideration," particularly in light of testimony that the clarifier was actually worth $33,900 when Courtright purchased it.

In addition, the lease in this case contains many of the other provisions important in determining whether a

financing arrangement exists. In *All–States Leasing Co. v. Ochs,* 42 Ore. App. 319, 324–25, 600 P.2d 899 (1979), the Oregon Court of Appeals set forth relevant considerations typical of those examined in other jurisdictions:

> [T]he presence of certain factors can be indicative, including, but not limited to: (1) whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal . . . (2) whether the lessee acquires any equity in the equipment; (3) whether the lessee is required to bear the entire risk of loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rent payments, and (6) whether the property was purchased specifically for lease to this lessee.

In this case, at least elements (1), (3), (4) and (6) were present in the lease agreement between Courtright and Dolsen. We hold that the lease created a security interest in the clarifier. As will be seen below, the clarifier must also be considered a fixture and the security interest was thus unperfected under the provisions of RCW 62A.9–302, .9–303, .9–301, .9–313(4).

### B
#### SECURITY INTERESTS IN FIXTURES

■ In determining whether the clarifier is a fixture, we must consider "[t]he law of this state other than [the code]." RCW 62A.9–313(1). *See also In re Factory Homes Corp.,* 333 F. Supp. 126 (W.D. Ark. 1971); *In re Collier,* 3 U.C.C. Rep. Serv. 1076 (E.D. Tenn. 1966). In Washington:

> "The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty . . . (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

*Department of Revenue v. Boeing,* 85 Wn.2d 663, 667, 538 P.2d 505 (1975); *Lipsett Steel Prods., Inc. v. King County,* 67 Wn.2d 650, 652, 409 P.2d 475 (1965). The clarifier is a fixture under this test. There was testimony that it could

not be removed without substantial damage both to itself and to the realty. It was in use as an essential part of the processing plant. Warden's intent must surely have been to permanently affix the clarifier.

 It is clear that Dolsen's security interest in the fixture must fall to Cotten's claims. RCW 62A.9–313(4) provides:

> [S]ecurity interests [in fixtures] . . . do not take priority over
> (a) a subsequent purchaser for value of any interest in the real estate; . . .

As a subsequent purchaser for value, Cotten's claim takes priority over Dolsen's. This case differs from *Northwest Equip. Sales Co. v. Western Packers, Inc.*, 543 F.2d 65 (9th Cir. 1976), in which the subsequent purchaser was denied ownership in a previously encumbered fixture, because in this case there is neither evidence that Cotten had any actual notice of the existence of a security interest in the clarifier[2] nor constructive notice of the fixture lease because of Dolsen's failure to record its interests in the clarifier under RCW 65.08.070, the real property recording statute. *See Leawood Nat'l Bank v. City Nat'l Bank & Trust Co.*, 474 S.W.2d 641, 645 (Mo. App. 1971) (requiring recordation of lease in fixture to protect lessor's interest).

We therefore hold that Cotten's interests in the clarifier take priority over Dolsen's unperfected security interest.

---

[2]It was suggested by Cotten's counsel at oral argument that Dolsen could have protected its interests by placing a notice on the clarifier. The case of *Anderson v. Courtney*, 203 Okla. 71, 74–75, 218 P.2d 361, 365 (1950) was cited:

> [T]he water tank and tower [were allowed] to remain where it was . . . in the same condition for a period of more than two years without any mark of any kind thereon and with nothing whatever to give notice of his claim of ownership or possession.

We do not here suggest that such a "posting" requirement is necessary or sufficient to preserve ownership interest in a fixture. This is not required by the code. RCW 62A.9–314. However, had Dolsen taken such a step Cotten might have had actual knowledge of its ownership interest. This fact prevented the subsequent purchaser of the real estate from claiming priority over a prior secured party in *Northwest Equip. Sales Co. v. Western Packers, Inc.*, 543 F.2d 65 (9th Cir. 1976).

Cotten owns the clarifier free and clear of any ownership interest asserted by Courtright and Dolsen.

## IV

Having established that Cotten owns the clarifier, the question remains who, between Courtright and Dolsen, shall bear the loss of their ownership interests. The trial court placed the burden on Dolsen and awarded damages on that basis to Courtright. Dolsen appealed that decision to the Court of Appeals, but it was not reached because of the court's disposition of the ownership issue in favor of Courtright and Dolsen.

■ Under RAP 13.7(c), when this court accepts a petition for review it "will review only the questions raised . . . in the petition for review and answer." In this case, Cotten's petition discusses only those issues regarding his ownership interest in the clarifier. There was no answer to the petition for review. Thus, the question of whether Courtright or Dolsen should bear the risk of loss is not properly before this court.

In *Kitt v. Yakima County,* 93 Wn.2d 670, 611 P.2d 1234 (1980), we similarly declined to address issues not before this court pursuant to RAP 13.7(c). In that case, the County, which had prevailed at the Court of Appeals, had neglected to bring before this court subsidiary procedural issues on which the Court of Appeals had ruled against it. We did not remand for reconsideration of those issues, as requested by the County in oral argument.

However, in *Kitt,* unlike this case, the unaddressed issues were dealt with in the Court of Appeals opinion and also directly involved both parties present before this court in *Kitt.*[3] The Court of Appeals here did not address Dolsen's second ground of complaint regarding the trial court's decision.

Because it is clear that Dolsen preserved its appeal of the trial court's damage award to the Court of Appeals and

---

[3]Counsel for Courtright did not appear at oral argument of the instant case before this court.

because consideration of the issues properly raised before the Court of Appeals is provided as a matter of right, RAP 4.1, 6.1, we now remand the case to the Court of Appeals for consideration of Dolsen's challenges to the award of damages to Courtright. In doing so, we express no opinion regarding the correctness of Dolsen's position. We note only that Dolsen has the right to have the trial court's decision on this matter reviewed by an appellate court.

Cotten owns the clarifier as a subsequent purchaser for value of the real estate to which the equipment was affixed. His claim thus has priority over the unperfected security interest represented by the lease between Courtright and Dolsen which was otherwise unrecorded as an interest in real property. This case therefore must be remanded to the Court of Appeals for consideration of the claims of Courtright and Dolsen against one another, pursuant to our holdings in this opinion.

It is so ordered.

UTTER, C.J., ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, and WILLIAMS, JJ., and SOULE, J. Pro Tem., concur.