12 P.3d 119 (2000)
142 Wash.2d 135
J.T. HALEY, Respondent,
v.
Carl HIGHLAND, Petitioner.
No. 67402-7.
Supreme Court of Washington, En Banc.
Argued December 9, 1999.
Decided November 2, 2000.
*120 Leland Ripley, Seattle, Carl Highland, Bellevue, for Petitioner.
Jeffrey Thornton Haley, Bellevue, William Robert Bishin, Seattle, for Respondent.
MADSEN, J.
In deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835 (1980), and Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588 (1997), we held that a tortfeasor's one-half interest in community property, both personal and real, may be reached to satisfy a judgment for a separate tort committed during marriage. In this case we are asked to decide whether deElche and Keene should be extended to allow the use of a tortfeasor's one-half interest in community personal property to satisfy a judgment based on a separate tort committed prior to marriage. We hold that these assets may be reached in the event a tortfeasor's separate property is insufficient to satisfy the claim.

FACTS
Coresoft Corporation (Coresoft), a closelyheld software company, was founded in 1984. Respondent Jeffrey T. Haley (Haley), a software attorney, began his involvement with Coresoft by consulting the company on minor legal issues. In 1989, Haley made an initial financial investment in Coresoft, becoming a member of the company's Board of Directors (Board).
The financial well-being of Coresoft was in a constant state of deterioration, yet its stockholders remained optimistic that it would one day become profitable. To expedite this desired result the Board determined that a professional president should be hired to turn Coresoft around financially. Petitioner Carl Highland (Highland) was chosen for the position and took office in July of 1989.
Coresoft continued to experience financial difficulties after Highland's arrival. A symptom of Coresoft's fiscal disarray was the fact that during Highland's tenure the company periodically failed to pay withholding taxes due the Internal Revenue Service (IRS), yet continued to deduct the owed amounts from employees' total compensation. This illegal activity exposed Coresoft to significant potential liability. During this period Highland made reports to the Board regarding the well-being of Coresoft, both written and oral, which omitted any reference to Coresoft's illegal tax activities.
On multiple occasions in 1989 and 1990, Haley purchased Coresoft stock and made loans to the corporation. These financial outlays by Haley occurred at the same time Coresofts's illegal activities were being undertaken. Thereafter, Coresoft filed for bankruptcy. In total, Haley absorbed a loss of $122,350 from investments made during Highland's tenure.
In 1994, Haley filed suit against Highland in King County Superior Court, alleging common law fraud, violation of state and federal securities laws, deceptive business practices, restitution, slander, and breach of promise to pay. The claims were based on an allegation that Highland failed to inform Haley, as well as the rest of the Board, of *121 Coresoft's illegal tax activities. Highland responded by denying he had any knowledge of Coresoft's illegal activities at the time he made his reports to the Board.
Haley agreed to waive all claims in excess of $35,000 and submit the lawsuit to arbitration. In May 1995, an arbitrator found in favor of Haley. In granting the award the arbitrator filled out a preprinted form, typing in the following language: "$2,500 plus interest at the rate of 12% per annum from June 8, 1990." Clerk's Papers (CP) at 10. That is the extent of the appellate record regarding the arbitrator's findings.
Haley appealed the arbitration award and sought a trial de novo. At trial, a superior court jury awarded Haley $2,500 for securities law violations, the same amount as the arbitrator, but found against him on all other claims. As permitted by the Securities Act of Washington, Chapter 21.20 RCW, the trial court added interest at eight percent per annum from June 8, 1990. RCW 21.20.430. The court also granted Haley attorney fees and costs in the amount of $19,262, resulting in a total judgment in favor of Haley for $23,126.
All of Highland's tortious conduct occurred in 1989 and 1990. Highland was unwed during this entire period, making the tort judgment against him a separate liability, but was subsequently married in 1992. Highland's wife was not named as a party to the suit, nor does either party dispute that Haley's claim is against Highland in his separate capacity. Unlike Highland, Haley was married at all times pertinent to this case.
Highland was also granted attorney fees and costs, but in the amount of $24,321, an amount which exceeded Haley's total award. This award was made pursuant to MAR 7.3, which allows an attorney fee award against a party that appeals an arbitration "award and fails to improve the[ir] position on the trial de novo." Mandatory Arbitration Rule (MAR) 7.3. The trial court found that only compensatory damages, which were $2,500 at trial as well as the arbitration, not attorney fees, should be taken into account in making an assessment of whether a party has improved its position under MAR 7.3.
The parties then attempted to collect their respective judgments. This case has a long and drawn out post-trial history related to the parties' collection efforts. Only those matters relevant to this petition will be addressed. On April 23, 1996, Haley obtained, from King County Superior Court, an order enjoining Highland from transferring all his personal property, including, among other items, the judgment he held against Haley. Highland moved for reconsideration of the order. On May 1, 1996, the trial court vacated its previous order and entered a revised order, assessing $250 in terms against Haley for "violation of CR 11 for presenting an order that exceeded statutory authorization." CP at 241. The revised order did not specify in what manner Haley had "exceeded statutory authorization," but it did continue to restrict Highland from transferring the judgment he held against Haley. CP at 242.
On May 3, 1996, Haley obtained a writ of execution against both Highland's MAR judgment and the $250 award of CR 11 terms granted by the trial court. Highland filed a motion to quash the writ. On June 11, 1996, the trial court heard the motion and entered an order quashing the writ and finding that Highland's MAR judgment against Haley, as well as the $250 in terms was exempt from execution by reason of RCW 26.16.200. This statute provides that "[n]either husband or wife is liable for the debts or liabilities of the other incurred before marriage...." RCW 26.16.200.
Haley then filed a motion for reconsideration of the order, which was denied without comment on July 8, 1996. Haley also filed a motion to establish that Highland's marital community was liable for the judgment against Highland, that one-half of Highland's personal earnings are subject to execution to satisfy the judgment, and that Highland's MAR judgment against Haley is subject to execution to satisfy Haley's securities law claim. The motion was heard by the trial court on July 18, 1996. The court denied the motion, "hold[ing] that RCW 26.16.200 controls the disposition of this case" and terms were imposed against Haley in the amount of $250. CP at 405.
*122 Highland garnished Haley's community bank account for $2,154.24 in attempting to satisfy his MAR attorney fee award. On December 2, 1996, Haley filed a Motion For an Order Directing Clerk to Hold Garnishment Funds. The trial court issued a ruling on December 16, 1996, stating:
This Court's order of July 18, 1996 states that RCW 26.16.200 controls the disposition of this case. Specifically, this Court has held that the judgments in favor of each party in this case are community assets, and the judgments against each of the parties are separate liabilities, thus they cannot be executed to satisfy each other, nor can community [property] assets be used to satisfy the separate liabilities.
CP at 463.
Highland did not appeal the trial court's order on its merits. Instead, on July 1, 1997, Highland moved to vacate the December 16, 1996 order pursuant to CR 60. Highland's motion was based upon the following provisions: CR 60(b)(1) irregularity in obtaining an order, and CR 60(b)(4) fraud, misrepresentation or other misconduct of an adverse party. After hearing arguments on August 12, 1997, the trial court denied Highland's CR 60 motion.
Haley appealed the trial court's rulings and Highland cross-appealed the trial court's denial of his CR 60 motion to vacate. The Court of Appeals, Division One, issued a partially published opinion. Haley v. Highland, 92 Wash.App. 48, 960 P.2d 962 (1998). In the published section, the court reversed the trial court's determination as to RCW 26.16.200, holding that Haley is able to execute against Highland's one-half interest in community personal property. Id. at 54, 960 P.2d 962. In the unpublished section, the court reversed the MAR 7.3 attorney fee award granted to Highland. Haley v. Highland, No. 38213-6-1, slip op. at 8-13 (Wash. Ct.App. Aug. 17, 1998). The court did not address any of the additional issues raised by the parties.

ANALYSIS

I
The principal issue presented by this case is whether the judgment against Highland, a married person, for tortious conduct that occurred before his marriage may be enforced against his one-half interest in community personal property if his separate property is insufficient to satisfy the claim. Highland argues that RCW 26.16.200 shields his community property from collection under these circumstances. Haley contends RCW 26.16.200 is inapplicable, and that Highland's one-half interest in community property is subject to execution per this court's decisions in deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835, and Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588.
We recognize at the outset that our prior decisions in deElche and Keene answer the basic policy questions presented by this case. Prior to deElche, Washington case law had shielded community property, both personal and real, from execution to satisfy nearly all separate obligations of either spouse, incurred both before and during marriage. See, e.g., Stockand v. Bartlett, 4 Wash. 730, 31 P. 24 (1892) (separate debt); Snyder v. Stringer, 116 Wash. 131, 198 P. 733 (1921) (same); Smyser v. Smyser, 17 Wash.2d 301, 135 P.2d 455 (1943) (same); Watters v. Doud, 92 Wash.2d 317, 596 P.2d 280 (1979) (same); Pac. Gamble Robinson Co. v. Lapp, 95 Wash.2d 341, 622 P.2d 850 (1980) (same); Brotton v. Langert, 1 Wash. 73, 23 P. 688 (1890) (separate tort); Schramm v. Steele, 97 Wash. 309, 166 P. 634 (1917) (same). Our landmark decision in deElche signified a major departure from this line of authority. Harry M. Cross, The Community Property Law, 61 Wash. L.Rev. 13, 115 (1986).
In deElche, a married tortfeasor was found separately liable to a victim for a tort committed while married. deElche, 95 Wash.2d at 238, 622 P.2d 835. The tortfeasor had no separate property and under then-existing law all community assets were shielded from collection for judgments based on the separate torts of either spouse. In deElche, we changed this rule. First, we held that the "logical basis for the exemption of community property from separate tort liabilities (i.e., that the entity and not the spouses owned the property) has ... been eroded." Id. at 244, 622 P.2d 835. Next, we observed that *123 "statutory law does not support th[e] exemption." Id. And finally, we noted that deElche was a case dealing with torts, not debts and that "[d]istinction can be made between debts and torts, and it is not necessary that the rules regarding them be parallel." Id. at 246 n. 3, 622 P.2d 835. As a natural derivative of these conclusions, we held that a tortfeasor's one-half interest in community personal property may be executed upon to satisfy a separate tort judgment against that spouse, for a tort committed during marriage, if they possess insufficient separate assets to satisfy the claim. Id. at 246, 622 P.2d 835. Keene extended deElche to allow recovery from a tortfeasor's one-half interest in community real property. Keene, 131 Wash.2d at 834-35, 935 P.2d 588.
deElche and Keene firmly ensconced in this area of law the principle that "`absent express statutory provision, or compelling public policy, the law should not immunize tortfeasors or deny remedy to their victims.'" Keene, 131 Wash.2d at 832, 935 P.2d 588 (quoting Freehe v. Freehe, 81 Wash.2d 183, 192, 500 P.2d 771 (1972) overruled on other grounds by Brown v. Brown, 100 Wash.2d 729, 675 P.2d 1207 (1984)). The torts committed in deElche and Keene were separate torts because of the nature of the conduct that occurred. deElche, 95 Wash.2d at 238, 622 P.2d 835 (forcible rape); Keene, 131 Wash.2d at 824-25, 935 P.2d 588 (child molestation). In both cases the tortfeasors were married at the time of their tortious activity. deElche, 95 Wash.2d at 238, 622 P.2d 835; Keene, 131 Wash.2d at 824-25, 935 P.2d 588. In this case, Highland's securities fraud violation is not a separate tort because of the nature of his conduct. Rather, it is separate because he was unmarried during the period when his tortious activity occurred. We believe there is no policy justification for treating these two circumstances differently.
Nevertheless, Highland argues that this distinction is dispositive due to the operation of RCW 26.16.200. Highland contends that this statute, which was clearly inapplicable under the facts of deElche and Keene, bars execution against all community assets to satisfy a judgment arising from one spouse's separate tort committed prior to marriage. We reject this contention.
Enacted in 1881, RCW 26.16.200's general provision, states:
Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other.
Wash.Code of 1881, § 2405, at 414 (emphasis added).
Two provisos were added in 1969:
PROVIDED, That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: PROVIDED FURTHER, That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties.
Laws of 1969, 1st Ex.Sess., ch. 121 (emphasis added).[1]
*124 Under the statute's general provision, "[n]either husband or wife is liable for the debts or liabilities of the other incurred before marriage...." RCW 26.16.200 (emphasis added). This provision also provides that "neither husband or wife is liable for the ... separate debts of each other...." Id. This second clause, which refers only to "debts," is not limited to premarital obligations and contains within its scope separate debts incurred during marriage. This is in direct contrast to the first clause, which refers to "debts or liabilities," and only includes separate obligations incurred before marriage. Separate "debts or liabilities" incurred before marriage and separate "debts," but not liabilities, incurred during marriage, are treated in the same manner under the general provision of RCW 26.16.200. Liabilities incurred after marriage are not within the statute's scope.
The parties both contend that RCW 26.16.200 protects property, yet they disagree as to which property is protected. The claims dealt with in deElche and Keene, separate torts committed during marriage, are liabilities, not debts. C.f. Caplan v. Sullivan, 37 Wash.App. 289, 293, 679 P.2d 949 (1984) (holding that an unliquidated tort claim is not a debt). As such, they are the only species of separate obligation that RCW 26.16.200, under any interpretation, does not address.[2] It is for this reason that Highland is able to tenably argue that we should not apply the rule in deElche and Keene in cases where a tort is committed prior to marriage.
Highland argues that RCW 26.16.200, by its use of the language "neither husband or wife is liable for," protects all community property from being used to satisfy the separate "debts or liabilities" of either spouse incurred before marriage. Under Highland's reading, the shielded property would include the one-half interest in community property possessed by the spouse incurring the premarital "debt or liability."
In contrast, Haley contends the language "[n]either husband or wife is liable for" protects only the separate property of the spouse who did not incur the obligation. Under Haley's proposed interpretation, all community property remains available for the satisfaction of the separate "debts or liabilities" incurred by one spouse prior to marriage. According to Haley, none of the protections afforded community property in this state are based on RCW 26.16.200. Suppl. Br. of Resp't at 10. In essence, Haley argues that RCW 26.16.200 creates a limited level of guaranteed protection for the separate property of a spouse, preventing the use of those assets to satisfy the separate "debts or liabilities" of the other spouse incurred before marriage.
We think Haley's argument comes closer to the mark. The plain language of the statute demonstrates that the statute was not intended to protect community property. The phrase "community property" is never mentioned in the general provision of RCW 26.16.200. Indeed, noncommunity property states have enacted nearly identical statutory provisions. See, e.g., Title 11, Or.Rev.Stat. § 108.020 (1998) ("[n]either husband nor wife is liable for the debts or liabilities of the other incurred before marriage ... and ... they are not liable for the separate debts of each other"), Bosma v. Harder, 94 Or. 219, 227-28, 185 P. 741 (1919) ("The whole theory of the Oregon system of jurisprudence is adverse to community property."); see also Sentry Investigations, Inc. v. Davis, 841 P.2d 732 (Utah Ct.App.1992), Russel v. Long, 52 Iowa 250, 3 N.W. 75 (1879) (both cases from noncommunity property jurisdictions *125 examining substantially similar statutory provisions). This leads us to conclude that the general provision of RCW 26.16.200 was not intended to protect community property, but rather was intended to protect one spouse from vicarious liability for the separate obligations of the other.
When our legislature has intended to protect property, it has been explicit in its command. See, e.g., RCW 26.16.010 ("Property and pecuniary rights owned by the husband before marriage ... shall not be subject to the debts or contracts of his wife...."); RCW 26.16.020 ("The property and pecuniary rights of every married woman at the time of her marriage ... shall not be subject to the debts or contracts of her husband...."); RCW 26.16.190 ("For all injuries committed by a married person, there shall be no recovery against the separate property of the other spouse....")
Even within the general provision of RCW 26.16.200, in its final clause, this point is made clear. In that clause the Legislature provided that "nor is the rent or income of the separate property of either liable for the separate debts of the other[.]" RCW 26.16.200. When the Legislature uses different words in the same statute it is presumed that a different meaning is intended. State ex rel. Schillberg v. Barnett, 79 Wash.2d 578, 584, 488 P.2d 255 (1971). Here the Legislature specifically mentioned separate property when referring to separate debts but did not mention community property in the same provision.
We believe the phrase "liable for," in the context of RCW 26.16.200, is best interpreted as synonymous with "responsible for." The general provision of RCW 26.16.200 provides for the responsibility each spouse has for the statute's stated debts and liabilities. Once a spouse is found "liable for" a debt or liability, a wholly separate question is presented: What property is available to satisfy that spouse's legal obligation? In Washington, the answer to this question is ascertained by looking to the statutes and court decisions governing this issue, both as to debts and torts.
By statute, the separate property of either spouse is not subject to the "debts or contracts" of the other. RCW 26.16.010 (husband); RCW 26.16.020 (wife). Furthermore, under this court's decisional law, community property is generally not available to satisfy the separate debts of either spouse. Nichols Hills Bank v. McCool, 104 Wash.2d 78, 701 P.2d 1114 (1985).
There are limited exceptions to this general rule in the case of debts, created by decisional law and by statute. As to case law, in Fisch v. Marler, 1 Wash.2d 698, 97 P.2d 147 (1939), we held that the earnings of a spouse may be reached to satisfy that spouse's spousal maintenance obligations arising from a prior marriage. The provisos to RCW 26.16.200 illustrate a statutory exception, allowing a creditor to reach all of "the earnings and accumulations" of a debtor spouse to satisfy a separate debt incurred before marriage, provided that the debt is reduced to judgment within three years of the marriage. RCW 26.16.200. The provisos also contain an exception for child support obligations. RCW 26.16.200. These provisos expose specified "property" to liability for specified separate obligations. These provisions serve as an exception to the rule announced in RCW 26.16.200's general provision, that neither husband or wife is liable (or responsible) for the separate debts of the other. See Black's Law Dictionary 1225 (6th ed.1990) (citing Stoller v. State, 171 Neb. 93, 105 N.W.2d 852, 856 (1960) (a proviso is "[a] clause engrafted on a preceding enactment for the purpose of restraining or modifying the enacting clause or of excepting something from its operation which would otherwise have been within it.")).
A slightly different regime is established for tort obligations. RCW 26.16.190 exempts a non-tortfeasor spouse's separate property from collection for the torts of the other "except in cases where there would be joint responsibility if the marriage did not exist." RCW 26.16.190. Under deElche and Keene a tortfeasor spouse's one-half interest in community property, both personal and real, is also available to satisfy a separate tort judgment, provided separate property is insufficient to satisfy the claim.
*126 Highland argues, however, that cases from this Court and the Court of Appeals have interpreted RCW 26.16.200 as prohibiting the use of community property to satisfy liabilities incurred before marriage. To the contrary, the vast majority of our prior decisions support our interpretation of RCW 26.16.200. Collectively, they illustrate that the protections afforded community property in Washington are not derived from RCW 26.16.200. In deElche, we summarized the historical evolution of Washington's rule that "exempt[ed] community property from separate tort judgments ...." deElche, 95 Wash.2d at 239-44, 622 P.2d 835. Throughout deElche's prolonged discussion, we made no mention of RCW 26.16.200 as the basis of any of the historical rules.
deElche is not alone in this regard. In 1896, in Powell v. Pugh, 13 Wash. 577, 43 P. 879 (1896) (overruled in part on other grounds by Schramm), this court held that community property could be reached to satisfy the separate debts of the husband. The Powell rule was short lived, (see Schramm v. Steele, 97 Wash. 309, 166 P. 634 overruling Powell), yet despite its discontinued validity, this decision is instructive to the case at bar. Neither Powell nor Schramm made mention of the predecessor to RCW 26.16.200; however, if this statute protected community property, as argued by Highland, the Powell rule would have been in direct derogation of this statutory directive, as Powell dealt with a separate debt incurred during marriage.
Only two reported decisions of this court, in the one-hundred-nineteen years since RCW 26.16.200's original enactment, suggest that RCW 26.16.200's language, "[n]either husband or wife is liable for" specifically shields community property. In Watters v. Doud, 92 Wash.2d 317, 596 P.2d 280 (1979), we held that the three year time limitation found in the 1969 provisos to RCW 26.16.200 could not be tolled. In dicta the Watters court stated:
The effect of the general statute prior to the 1969 amendment was that immediately upon a debtor's marriage, a creditor lost the ability to enforce the claim against the new marital community. This rule was harsh, but it served "to assure the community enough integrity to allow development without handicaps unrelated to its own undertakings."
Watters, 92 Wash.2d at 322, 596 P.2d 280 (quoting Recent Case, 45 Wash. L.Rev. 192 (1970)).
RCW 26.16.200 was also briefly addressed in Escrow Serv. Co., Inc. v. Cressler, 59 Wash.2d 38, 365 P.2d 760 (1961), wherein we noted:
Under this statute [RCW 26.16.200], community property has never been held liable for the separate obligation of either spouse. A partial list of the cases which hold that the community is not liable for the separate debt of the husband is as follows....
Id. at 42, 365 P.2d 760. None of the 10 cases cited in support of the above statement reference RCW 26.16.200.[3]
Of particular note is our complete absence of reliance upon the general provision of RCW 26.16.200 as the source of the protections afforded community property in Washington for the 80 years preceding Escrow Service Co. It is also true that Powell, a decision that remained viable in this State for 21 years, would have been in direct derogation of the construction offered in Escrow Service Co . and Watters. This backdrop leads us to conclude that Escrow Service Co. and Watters were in error. Accordingly, we disapprove Escrow Serv. Co., 59 Wash.2d 38, 365 P.2d 760, and Watters, 92 Wash.2d 317, 596 P.2d 280, to the extent they suggest that the general provision of RCW 26.16.200 shields community property from collection for the separate obligations of a spouse.
Aside from the decision below, the Court of Appeals has addressed the issue of community property exposure for antenuptial tort liability on only one occasion. Caplan v. Sullivan, 37 Wash.App. 289, 679 P.2d 949 (1984). A close reading of Caplan sheds no *127 light on this case. Caplan held that an unliquidated tort claim is not a debt, and therefore does not fall under the provisos to RCW 26.16.200. Caplan, 37 Wash.App. at 293, 679 P.2d 949. When Sullivan was unwed he assaulted Caplan. Id. at 290, 679 P.2d 949. Within three years of Sullivan's marriage, Caplan obtained a tort judgment against him. Id. The trial court allowed garnishment of Sullivan's earnings to satisfy the judgment. Id. The trial court relied on the provisos to RCW 26.16.200, which allow collection against the "earnings and accumulations" of a debtor spouse if a premarital "debt" is reduced to judgment within three years of marriage.
The Court of Appeals reversed, reasoning that the term "debt" refers to an obligation that "aris[es] from contract" or is "a sum of money owed which is fixed and certain." Caplan, 37 Wash.App. at 292-93, 679 P.2d 949 (citing Commercial State Bank v. Curtis, 7 Wash.2d 296, 298, 109 P.2d 558 (1941); State ex rel. Miller v. Nat'l Farmers Org., 278 N.W.2d 905, 906 (Iowa 1979)). Caplan noted the different use of language between the general provision of RCW 26.16.200, which refers to premarital "debts or liabilities" and the later provisos, which apply exclusively to premarital "debts." Caplan, 37 Wash.App. at 292, 679 P.2d 949. The court noted that "[w]e must assume ... that the Legislature intended to exclude the term and that it meant what it said." Id. at 292, 679 P.2d 949 (citing Jepson v. Dep't of Labor & Indus., 89 Wash.2d 394, 403, 573 P.2d 10 (1977)). The Caplan court ultimately determined that Sullivan's "earnings and accumulations" could not be reached to satisfy the tort judgment against him. Id. at 293, 679 P.2d 949.
Caplan made its findings without considering deElche and its potential effect on the case. As the court noted:
The parties did not brief, and we do not need to decide, the applicability of deElche v. Jacobsen.... Even if deElche were to apply to this case, there is no indication in the record that Caplan established that his judgment could not be satisfied out of Sullivan's separate property prior to his attempt to garnish Sullivan's community property earnings, which would be required under the holding in deElche.

Id. at 293 n. 2, 679 P.2d, 949. Moreover, it is unclear whether Caplan prohibited garnishment of Sullivan's earnings because the language of the general provision of RCW 26.16.200 prohibited the use of community funds for this purpose, or because the decisional law prior to deElche would have done the same. Thus, Caplan provides no guidance to the question presented by this case.
We affirm the Court of Appeals by holding that RCW 26.16.200 does not bar the use of Highland's community property to satisfy a judgment based on his premarital tort. We further hold that this case is governed by deElche and Keene, permitting the use of Highland's one-half interest in community personal property to satisfy his separate tort obligation if his separate property is insufficient to satisfy the claim.

II
The second issue presented is whether the trial court properly declined to consider Haley's attorney fee award in determining whether he improved his position at a trial de novo for purposes of MAR 7.3. In making the arbitration award in favor of Haley, the arbitrator filled out a preprinted form, typing in the following language: "$2,500 plus interest at the rate of 12 % per annum from June 8, 1990." CP at 10. This is the extent of the appellate record regarding the arbitrator's findings. Haley appealed the arbitration award, seeking a trial de novo. At trial, the jury awarded Haley the same amount in compensatory damages as the arbitrator, $2500, and the trial court added interest at eight percent per annum from June 8, 1990. The trial court also granted Haley an award of attorney fees and costs in the amount of $19,262,[4] resulting in a total judgment of $23,126.
*128 Following trial, Highland presented a motion for attorney fees pursuant to MAR 7.3, which provides:
The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo.
MAR 7.3.
The trial court granted the motion, determining that Haley's compensatory award given by the arbitrator, $2,500, was the same amount awarded at the trial de novo, and that therefore Haley had not improved his position by seeking a trial de novo.[5] The MAR 7.3 award in favor of Highland was for $24,321, more than the total judgment granted in favor of Haley.
The Court of Appeals reversed, holding that the award of attorney fees should have been taken into account by the trial court in making its assessment under MAR 7.3. Only attorney fees attributable to work done at the arbitration level were taken into account by the Court of Appeals.[6]
Highland urges us to adopt Division Three's holding from Wilkerson v. United Inv., Inc., 62 Wash.App. 712, 815 P.2d 293 (1991). In Wilkerson an arbitrator awarded the Wilkersons $10,965.12 in compensatory damages on a claim against defendant Sloan for misrepresentation and a violation of the Consumer Protection Act (CPA) chapter 19.86 RCW. Id. at 716, 815 P.2d 293. The arbitrator also awarded statutory attorney fees and costs in the amount of $10,000, based on the CPA violation. Id. Sloan requested a trial de novo and a jury awarded the Wilkersons $16,000 in compensatory damages on their misrepresentation claim. Id. The jury found against the Wilkersons on their CPA claim so there was no statutory basis to award attorney fees.
The trial court found that Sloan had not improved his position at the trial de novo and awarded the Wilkersons attorney fees pursuant to MAR 7.3. Wilkerson, 62 Wash.App. at 714, 815 P.2d 293. Sloan appealed, contending that he improved his position at the trial de novo because the jury's award of compensatory damages was less than the total arbitrator's award of compensatory damages and attorney fees. Id. The Court of Appeals affirmed the trial court, holding that an award of attorney fees should not be considered in assessing whether a party has improved their position at a trial de novo. Id. at 717, 815 P.2d 293. The court stated:
It would be inequitable to compare the jury verdict for compensatory damages with an arbitrator's combined award of compensatory damages, attorney fees, and costs. The better approach to determine whether one's position has been improved, is to compare comparables.
Id.
We generally agree with the Court of Appeals' view that only comparables are to be compared; however, under the facts of this case, we need not decide whether to adopt Wilkerson's view that attorney fee awards have no place in making an MAR 7.3 determination. In this case, the arbitrator's award did not reflect an award of attorney fees. Haley could have requested a ruling from the arbitrator on the issue of attorney fees and his failure to do so precludes a finding that *129 he has improved his position under MAR 7.3.[7] Haley submitted a letter to the arbitrator, which contains the following excerpt:
Enclosed is a declaration for attorney fees for Plaintiffs. It includes all amounts through Thursday, April 27, 1995. It includes blanks for the remaining time through the completion of the arbitration hearing and for the bottom line total. At the hearing, I will complete the blanks and sign the declaration.
CP at 360.
The declaration contained in the record has not been completed. As such, there is nothing before this court indicating that Haley ever requested a ruling regarding attorney fees from the arbitrator.[8] Therefore, we reverse the Court of Appeals and reinstate Highland's MAR 7.3 attorney fee award.

III
On December 16, 1996, the trial court entered an order finding that Haley's liability to Highland for the MAR 7.3 judgment was separate in nature and that Haley's community assets were exempt from execution under RCW 26.16.200. Haley testified at trial that he was married. Highland did not make a timely appeal of the merits of this decision. Instead, Highland brought a motion to vacate pursuant to CR 60(b), which was denied by the trial court. Since the Court of Appeals reversed Highland's MAR 7.3 award, it did not reach this issue.
CR 60(b) provides that a "court may relieve a party ... from a final judgment, order, or proceeding ...." under specified circumstances. Highland claims that two provisions of CR 60(b) are at issue in this case: CR 60(b)(1), which allows relief when there is an "irregularity in obtaining a judgment or order," and CR 60(b)(4), which permits relief in cases of "[f]raud ... misrepresentation, or other misconduct of an adverse party[.]" A trial court's denial of a motion to vacate under CR 60(b) will not be overturned on appeal unless the court manifestly abused its discretion. In re of Guardianship of Adamec, 100 Wash.2d 166, 173, 667 P.2d 1085 (1983). Errors of law are not grounds for vacation under CR 60(b). Burlingame v. Consolidated Mines & Smelting Co., Ltd., 106 Wash.2d 328, 722 P.2d 67 (1986).
Highland's argument rests on allegations that Haley acted in an unethical manner in obtaining the order exempting his community assets from liability under RCW 26.16.200. Haley, an attorney, was representing himself pro se. First, Highland claims that Haley misrepresented a prior order of the trial court in written material he filed in support of his December 16, 1996, motion. The critical statement made by Haley was presented *130 to the trial court on December 12, 1996, and reads:
Last summer, both parties presented briefing to the Court on the subject of whether the liabilities and assets in question are community property or separate property. As stated in the submitted page of the transcript, the Court ruled that the judgment against me is a separate liability and is not enforceable against my community property. I now ask the Court to enter the accompanying proposed Order to this effect.
CP at 443 (emphasis added).
The statement Haley refers to above was made by the trial court during a July 18, 1996, argument on Haley's motion to establish that Highland's marital community was liable on the judgment against Highland, that one-half of Highland's personal earnings are subject to execution to satisfy the judgment, and that Highland's MAR judgment against Haley is subject to execution to satisfy Haley's securities law judgment. During argument, the trial court stated:
The judgment against him is a separate liability for each party. The judgment in favor of him is a community asset. The judgments cannot be executed to satisfy each other.
Verbatim Report of Proceedings (RP) at 591.
The trial court denied the motion that was heard on July 18, 1996, and in its written order determined that "RCW 26.16.200 controls the disposition of this case." CP at 405. Terms were also imposed against Haley in the amount of $250. CP at 405.
In ruling on the December 16, 1996 motion the trial court agreed with Haley's characterization of his statements made on July 18, 1996. The trial court's written ruling stated:
This Court's Order of July 18, 1996 states that RCW 26.16.200 controls the disposition of this case. Specifically, this Court has held that the judgments in favor of each party in this case are community assets, and the judgments against each of the parties are separate liabilities, thus they cannot be executed to satisfy each other, nor can community [property] asserts be used to satisfy the separate liabilities.
CP at 463.
Highland also alleges that Haley should have informed the trial court that he was ineligible for the RCW 26.16.200 exemption because he was married, since a debt "incurred by a spouse during marriage is presumed to be a community debt." Cross-App. Highland's Br. at 5. Highland claims that these activities violated CR 11, RPC 3.3(a)(1) (false statement of material fact), RPC 8.4(c) (dishonesty), and RPC 8.4(d) (conduct prejudicial to the administration of justice).
Highland contends these activities constitute an "irregularity" or "fraud" of such severity that the trial court abused its discretion in failing to vacate its December 16, 1996, order on the basis of CR 60(b)(1)(4). Highland is incorrect. The facts fail to support Highland's characterization of Haley's actions. The trial court did not determine that Haley had mischaracterized its rulings. In fact, the court continued to reiterate its prior statements, despite the fact that it was well aware of all the facts in this case.
Highland is merely attempting to use the appeal of his motion to vacate under CR 60(b) to reach the merits of an issue that was not appealed. As the trial court stated in its original denial of the CR 60(b) motion:
The error claimed by defendant is not an irregularity but a conclusion of law, and as such is not properly to be vacated [u]nder Civil Rule 60....
RP (Aug. 12, 1997) at 2. We agree and affirm the trial court's denial of Highland's CR 60(b) motion to vacate.

CONCLUSION
We affirm the Court of Appeals' holding that RCW 26.16.200 does not bar the use of Highland's one-half interest in community property to satisfy a judgment based on his premarital tort in the event that his separate property is insufficient to satisfy the claim. We reverse on the issue of Highland's MAR 7.3 award of attorney fees and affirm the trial court's denial of Highland's CR 60(b) motion to vacate. Pursuant to RCW *131 21.20.430(1), Haley is awarded attorney fees on appeal.[9]
GUY, C.J., SMITH, ALEXANDER, JJ., and BRIDGE, J.P.T., concur
TALMADGE, J. (concurring).
I agree with the majority's analysis of whether a tortfeasor's one-half interest in community personal property may be reached to satisfy a judgment based on a separate tort committed prior to marriage when the separate property is insufficient to satisfy a judgment. I write separately because I would treat the attorney fee award under MAR 7.3 differently than does the majority.
By its terms, MAR 7.3 allows an award of attorney fees after a trial de novo on a matter originally decided by an arbitrator if the party appealing an arbitrator's decision "fails to improve the party's position on the trial de novo." The Court of Appeals in Wilkerson v. United Inv., Inc., 62 Wash.App. 712, 717, 815 P.2d 293 (1991), was correct in holding this phrase requires a court to "compare comparables."
In specific, the court deciding if a party improved its position in comparison to the arbitration result for purposes of MAR 7.3 should compare the award of damages, exclusive of costs and attorney fees. Failing this, any party appealing the arbitrator's award and recovering the identical award of compensatory damages would always improve its position because it would recover additional interest and more attorney fees would be incurred. This would be inconsistent with the purpose of MAR 7.3 which is to discourage appeals from arbitrator decisions. Indeed, MAR 7.3 is a vital aspect of the overall public policy of utilizing mandatory civil arbitration to relieve court congestion. RCW 7.06.060; Christie-Lambert Van & Storage Co. v. McLeod, 39 Wash.App. 298, 303, 693 P.2d 161 (1984). The award of fees under this provision should compel parties to assess the arbitrator's award and the likely outcome of a trial de novo with frankness and prudence; meritless trials de novo must be deterred. To best advance this policy, courts should compare the true comparables: the compensatory damages awarded by the arbitrator with the compensatory damages awarded in the trial de novo.[1]
This rule is the general tradition in Washington. See, e.g., Sims v. KIRO, Inc., 20 Wash.App. 229, 238, 580 P.2d 642 (1978) (attorney fees and expert witness fees not considered costs for purposes of CR 68); RCW 4.84.250, .270 (requiring consideration of damages exclusive of costs); Northside Auto Serv., Inc. v. Consumers United Ins. Co., 25 Wash.App. 486, 492, 607 P.2d 890 (1980) (accumulation of interest not considered in deciding jurisdictional amount under RCW 4.84.250); Mackey v. American Fashion Inst. Corp., 60 Wash.App. 426, 431-32, 804 P.2d 642 (1991) (attorney fees not an element of damages for purposes of stating amount pleaded under RCW 4.84.250).
Under the analysis set forth above, Jeffrey Haley recovered $2,500 in compensatory damages from the arbitrator. Haley recovered $2,500 in compensatory damages after the trial de novo. Haley did not improve his result. Carl Highland was entitled to an award of attorney fees under MAR 7.3.[2]
*132 SANDERS, J. (dissenting).
I dissent from the majority's award of attorney fees to Carl Highland pursuant to Superior Court Mandatory Arbitration Rules (MAR), MAR 7.3. Jeffrey Haley improved his position and cannot be taxed his opponent's reasonable attorney fees under MAR 7.3.
In a swift stroke of judicial legislation, the majority creates a new arbitration rule by holding, "Haley could have requested a ruling from the arbitrator on the issue of attorney fees and his failure to do so precludes a finding that he has improved his position under MAR 7.3." Majority at 128-129. However, under the plain language of MAR 7.3 we need only determine whether Haley in fact improved his position at the trial de novo, which he obviously did when he was awarded substantial attorney fees at the trial de novo after having received none at arbitration.
Once a case is assigned to an arbitrator, the Superior Court Civil Rules (CR) do not apply. The mandatory arbitration rules govern arbitration proceedings "except where an arbitration rule states that a civil rule applies." MAR 1.3(b)(1). When a trial de novo is sought, MAR 7.2(b)(1) directs:

The trial de novo shall be conducted as though no arbitration proceeding had occurred. No reference shall be made to the arbitration award, in any pleading, brief, or other written or oral statement to the trial court or jury either before or during the trial, nor, in a jury trial, shall the jury be informed that there has been an arbitration proceeding.
(Emphasis added.) The Rules of Appellate Procedure (RAP) make clear they do not apply to appellate review of actions initiated in arbitration. See RAP 1.1(a) ("These rules govern proceedings in the Supreme Court and the Court of Appeals for review of a trial court decision and for direct review in the Court of Appeals of an administrative adjudicative order...."). Thus, CR and RAP are irrelevant and inapplicable when examining a party's actions in arbitration. Accordingly, we do not search a nonexistent record in an arbitration to see what arguments were made or omitted.
Attempting to justify its refusal to decide whether Haley improved his position at the trial de novo, the majority explains: "Haley could have requested a ruling from the arbitrator on the issue of attorney fees and his failure to do so precludes a finding that he has improved his position under MAR 7.3." Majority at 128-129. However, neither MAR 7.3 nor any other arbitration rule requires the prevailing party to request a ruling on attorney fees from the arbitrator before an appellate court will consider whether the party improved his position at the trial de novo. Unlike appeals governed by RAP 2.5(a), arbitration participants need not raise an issue for it to be preserved for review. Such would defeat the cost-effective simplicity of the arbitration as well as the "de novo" nature of the review.
Further, and in any event, the record does not support the majority's conclusion Haley failed to request such a ruling from the arbitrator. As the majority acknowledges, Haley submitted a letter to the arbitrator, which provided:
Enclosed is a declaration for attorney fees for Plaintiffs. It includes all amounts through Thursday, April 27, 1995. It includes blanks for the remaining time through the completion of the arbitration hearing and for the bottom line total. At the hearing, I will complete the blanks and sign the declaration.
Clerk's Papers (CP) at 360. The majority notes the declaration was not fully completed, and thus concludes "there is nothing before this court indicating that Haley ever requested a ruling regarding attorney fees from the arbitrator." Majority at 129. The majority is simply wrong. Attached to the letter requesting fees is a declaration of costs and attorney fees, in which Haley declared:
The services performed, fees, costs, and other expenses incurred by Plaintiffs through Thursday, April 27, 1995 are stated on the attached statement produced by the billing system of Graybeal Jackson Haley & Johnson. The total is $12,341.00 for fees and $385.59 for costs and expenses.

CP at 361-62 (emphasis added). While Haley did not fully complete the blanks detailing *133 additional costs and fees incurred at the arbitration hearing, Haley could not have more explicitly requested those reasonable attorney fees and expenses incurred prior to the hearing.
MAR 6.1 further undermines the majority's position. Describing the form and content of the award, MAR 6.1 mandates: "The arbitrator shall determine all issues raised by the pleadings, including a determination of any damages." Haley's suit against Highland alleged violation of state securities laws, among other theories. RCW 21.20.430(1) provides when a security has been sold in violation of state law, an individual may seek recovery of "the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees...." The arbitrator awarded Haley "$2,500 plus interest at the rate of 12% per annum from June 8, 1990." CP at 10. But as the majority correctly notes, "[t]he award of interest, which dates back to the time of the tortious activity of Highland, clearly indicates that no part of the $2500 was intended to be an award of attorney fees." Majority at 129 n. 8. Thus, we must conclude the arbitrator considered and rejected Haley's claim of entitlement to an award of reasonable attorney fees under his state securities claims. See MAR 6.1.
Citing Wilkerson v. United Inv., Inc., 62 Wash.App. 712, 815 P.2d 293 (1991), the majority suggests in dicta that an award of attorney fees may not be considered in assessing whether a party has improved its position at a trial de novo. Majority at 128. However, because the arbitrator's award did not reflect an award of attorney fees, the majority refuses to decisively adopt the Wilkerson approach. Majority at 128. The majority not only mischaracterizes the holding in Wilkerson but also fails to give meaning to the plain language of MAR 7.3.
An arbitrator awarded the Wilkersons $10,965.12 in compensatory damages for misrepresentation and violation of the Consumer Protection Act (CPA), RCW 19.86, plus $10,000 in reasonable attorney fees and costs. Wilkerson, 62 Wash.App. at 715, 815 P.2d 293. The defendant, Sloan, requested a trial de novo. A jury subsequently awarded the Wilkersons $16,000 in compensatory damages for the misrepresentation claim. Id. But because the trial court dismissed the CPA claim, there was no statutory basis for an award of reasonable attorney fees and none was made. Notwithstanding, the trial court found Sloan had not improved his position at the trial de novo and therefore awarded MAR 7.3 attorney fees to the Wilkersons.
Sloan appealed and maintained he improved his position at trial because the jury's award of compensatory damages was less than the arbitrator's total award of compensatory damages and attorney fees. The Court of Appeals rejected his argument, initially noting the distinction between compensatory damages and attorney fees. Id. at 716, 815 P.2d 293. The court then concluded:
It would be inequitable to compare the jury verdict for compensatory damages with an arbitrator's combined award of compensatory damages, attorney fees, and costs. The better approach to determine whether one's position has been improved, is to compare comparables. Here, the jury's compensatory damage award exceeded the arbitrator's compensatory damage award.
Id. at 717, 815 P.2d 293.
Assuming this court were to adopt Wilkerson, we would be compelled to conclude Haley improved his position at the trial de novo. If we "compare comparables"although nothing in the plain language of MAR 7.3 requires us to do sosimple mathematics demonstrates Haley unquestionably improved his position at the trial de novo. Although the jury's compensatory award did not exceed that of the arbitrator, it also was not less than that awarded by the arbitrator. In fact, both the arbitrator and the jury awarded precisely the same compensatory award$2,500. But in addition to that the trial court also awarded substantial attorney fees and expenses attributable to the arbitration, whereas the arbitrator did not make such an award. Accordingly, it simply cannot be said Haley did not improve his position at the trial de novo if we are "comparing comparables."
But we need not adopt the Wilkerson approach to determine Haley improved his position at the trial de novo. Nothing in MAR *134 7.3 precludes consideration of attorney fees or costs awarded at a trial de novo when determining whether a party improved his or her position. The plain, unambiguous language of MAR 7.3 provides: "The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo." Even a child can appreciate that $4,695[1] is more than $2,500. Thus Haley clearly improved his position at the trial de novo. Therefore the trial court erroneously awarded Highland reasonable attorney fees and costs pursuant to MAR 7.3.
Wilkerson stated the purpose of the MAR 7.3 attorney fee award is to discourage meritless appeals of arbitration awards and relieve court congestion. Wilkerson, 62 Wash.App. at 716, 815 P.2d 293. Haley's appeal from the arbitration award was hardly "meritless." In fact, he was awarded the substantial reasonable attorney fees the arbitrator denied for precisely the same work. Since Haley improved his position at the trial de novo, I would affirm the Court of Appeals vacation of Highland's MAR 7.3 attorney fee award.
For these reasons, I respectfully dissent.
JOHNSON, J., concurs.
NOTES
[1] Subsequent additions were made to RCW 26.16.200 in 1983. The statute currently reads in full:

Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: PROVIDED, That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section, neither the husband nor the wife shall be construed to have any interest in the earnings of the other: PROVIDED FURTHER, That no separate debt, except a child support or maintenance obligation, may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties. The obligation of a parent or stepparent to support a child may be collected out of the parent's or stepparent's separate property, the parent's or stepparent's earnings and accumulations, and the parent's or stepparent's share of community personal and real property. Funds in a community bank account which can be identified as the earnings of the nonobligated spouse are exempt from satisfaction of the child support obligation of the debtor spouse.
RCW 26.16.200.
[2] We did not cite RCW 26.16.200 in either deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835 (1980) or Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588 (1997) but simply noted the "absence of any statute" governing the question presented. Keene, 131 Wash.2d at 834, 935 P.2d 588; deElche, 95 Wash.2d at 244, 622 P.2d 835.
[3] Both Watters v. Doud, 92 Wash.2d 317, 596 P.2d 280 (1979), and Escrow Serv. Co. v. Cressler, 59 Wash.2d 38, 365 P.2d 760 (1961), deal with debts, not torts, but as previously noted, the general provision refers to both premarital "debts or liabilities" and "debts" incurred during marriage.
[4] This award is considerably less than the total amount of attorney fees and costs requested by Haley. The basis of the trial court's award is RCW 21.20.430(1), which allows, but does not mandate, an award of attorney fees for State Securities Act violations.
[5] Neither party argues that the differential interest rates between the award given at trial (8%) and that given at arbitration (12%), should have any bearing on the outcome of the case. Nor does either party attempt to explain why this difference exists. As such, it will not be addressed.
[6] The Court of Appeals, in breaking down the award of attorney fees, stated:

The bulk of Haley's award of attorney fees at trial, $13,180 out of $18,180, was for trial counsel's fees at the trial de novo. Because these fees were not incurred for the arbitration, they cannot figure into a calculation as to whether Haley improved his position at trial. But the trial court also awarded to Haley a flat $5,000 for his "other itemized legal work."
. . . .
Haley detailed 50.3 hours devoted to legal work done before the arbitration.... These 50.3 hours amount to 43.9 percent of the "other itemized legal work." The trial court's order establishes that the $5,000 was to be spread pro rata over every item claimed. Thus, the court awarded Haley $2,195 ($5,000 × .439) for legal fees incurred before arbitration. With this amount added to the jury's verdict of $2,500, Haley obtained a larger sum at trial than at arbitration.
Haley v. Highland, No. 38213-6-I, slip op. at 10-11 (Wash.Ct.App. Aug. 17, 1998).
[7] Although not directly on point, the Court of Appeals' decision in Christie-Lambert Van & Storage Co. v. McLeod, 39 Wash.App. 298, 693 P.2d 161 (1984), supports this position. In that case, the respondent moved for a trial de novo following an arbitration award in favor of Christie-Lambert. Id. at 300, 693 P.2d 161. At trial, the respondent asserted a cross-claim against a codefendant, which was not presented to the arbitrator. Respondent received a sizeable judgment on that claim, while all of Christie-Lambert's claims against respondent were resolved in the same manner and in the same amounts at arbitration and trial. The trial court denied Christie-Lambert's request for an MAR 7.3 attorney fee award, finding that because of the judgment on the cross-claim, respondent improved his position at the trial de novo. Id. at 301, 693 P.2d 161. The Court of Appeals reversed, stating

it is inherently unfair to deny an attorney fee award to a party that has borne the cost of mandatory arbitration and a trial de novo without a change in results where the denial is based upon the appellant's improving his overall position in the trial de novo solely because of a new claim brought for the first time on appeal.
Id. at 304, 693 P.2d 161.
[8] Haley argues that the arbitration award may have included an award of attorney fees, and that if it did, he would have improved his position under any analysis adopted by this Court. It is true that a reviewing court should not look behind a judgment to ascertain what it includes. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). However, in this case, the face of the judgment itself indicates that it did not include attorney fees. The arbitrator awarded Haley "$2,500 plus interest at the rate of 12% per annum from June 8, 1990." Clerk's Papers (CP) at 10. The award of interest, which dates back to the time of the tortious activity of Highland, clearly indicates that no part of the $2,500 was intended to be an award of attorney fees.
[9] In the Court of Appeals, Haley argued the trial court erred in holding that Highland's MAR 7.3 judgment for attorney fees is a community asset and therefore not subject to execution to satisfy the separate tort judgment owed to Haley by Highland. The Court of Appeals reversed Highland's MAR 7.3 award, so it did not reach Haley's contention. We reinstate the MAR 7.3 award and accordingly remand this case to the Court of Appeals for its resolution of this issue. See RAP 13.7(b); Courtright Cattle Co. v. Dolsen Co., 94 Wash.2d 645, 658-59, 619 P.2d 344 (1980).
[1] In Christie-Lambert, the Court of Appeals allowed an award of attorney fees to the appellant although the respondent improved its overall position in the trial de novo over the result at arbitration. The respondent accomplished the better result by asserting an entirely new additional claim in the trial de novo. The court allowed fees under MAR 7.3 because, as to the issues litigated at arbitration and litigated in the trial de novo, the respondent's position on compensatory damages did not improve.
[2] Parenthetically, this case illustrates precisely why an award of fees is appropriate. This case has persisted in litigation long beyond the realm of the rational.
[1] This figure represents the award of legal fees incurred before arbitration ($2,195) plus the jury's compensatory award ($2,500). See Haley v. Highland, No. 38213-6-I, slip op. at 10-11 (Wash.Ct.App. Aug. 17, 1998).