**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| GRANITE CAPITAL GROUP, INC., a California corporation, and KILU PEAK PARTNERS, INC., a California corporation, | No. 86927-2-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KAREN JOAN OJIRU f/k/a KAREN JOAN GETTY, a married woman; THE KAREN JOAN OJIRU f/k/a KAREN JOAN GETTY HALF INTEREST OF MARITAL COMMUNITY BETWEEN KAREN JOAN OJIRU f/k/a KAREN JOAN GETTY AND MOVOTOSA OJIRU; and MOVOTOSA OJIRU, | |
| Appellants. | |

MANN, J. — This case arises from a creditor's efforts to collect upon a criminal restitution judgment from the tortfeasor's one-half interest in her marital community assets. Karen Joan Ojiru and Movotosa Ojiru appeal the trial court's order voiding their purported premarital agreements and granting summary judgment for Granite Capital Group, Inc. and Kilu Peak Partners, Inc. Because the Ojirus failed to file any admissible factual evidence in opposition to summary judgment and their arguments fail as a matter of law, we disagree and affirm.

I

Karen Joan Getty and Movotosa Ojiru were married on or around July 9, 2014. On January 2, 2015, Karen entered a plea of guilty in the California superior court to embezzling funds from her employer Granite Peak Partners, Inc. (Granite Peak) between September 2010 and January 2013.[1]  On May 19, 2017, the California court entered a judgment and order for victim restitution against Karen in the amount of $547,925.88 plus 10 percent interest per year from the date of sentencing.

In June 2019, Granite Peak filed the California judgment in King County Superior Court in the amount of $649,615.57.[2]  Counsel for Granite Peak took Karen's debtor's examination twice.  Karen stated that she did not have enough assets to pay the foreign judgment.  Counsel also deposed both Karen and Movotosa.  During the course of these proceedings, Karen produced a "Premarital Agreement" dated July 23, 2019 (the 2019 Agreement).[3]  The 2019 Agreement was purportedly witnessed by Karen's mother Bettina Nelson and notarized by Andrew Sun.  But Nelson died on December 17, 2016, and Sun failed to include his notary license number.  The 2019 Agreement also states that Karen and Movotosa prepared and provided financial disclosure statements "attached to this agreement," but no such documents were attached.

In 2022, Granite Peak filed an action against the Ojirus seeking declaratory judgment that it be allowed to recover from Movotosa's interest in their marital community property assets to satisfy the judgment.[4]  In response, Karen produced a

---

[1] We refer to Karen and Movotosa Ojiru by their first names for clarity, we intend no disrespect.
[2] King County Superior Court No. 19-2-16288-1 SEA.
[3] The parties executed the 2019 Agreement about five years after the date they were married, so technically it is a postnuptial agreement.
[4] King County Superior Court No. 22-2-00741-9 SEA.

second "Premarital Agreement" dated March 25, 2014 (the 2014 Agreement) that was purportedly signed by the parties before their marriage and witnessed by Nelson while she was still alive. But the document was not notarized. On cross-motions for summary judgment, the trial court ruled that the Ojirus were entitled to judgment as a matter of law on Granite Peak's attempt to enforce the judgment against Movotosa's half interest in the marital community property and dismissed Granite Peak's complaint.

After Granite Peak was administratively dissolved, half of its interest in the judgment was assigned to Granite Capital Group, Inc. and the other half was assigned to Kilu Peak Partners, Inc. (collectively Granite/Kilu). In August 2023, Granite/Kilu filed a complaint for declaratory judgment seeking a determination that it is entitled to recover from Karen's interest in the Getty-Ojiru community property assets to satisfy the judgment.[5] Granite/Kilu also sought a determination that the 2014 and 2019 Agreements are invalid and void.

On January 26, 2024, Granite/Kilu moved for summary judgment, arguing that there is no question of fact that it should be able to pursue Karen's one-half interest in the Getty-Ojiru community property to satisfy the California judgment and that the Ojirus cannot meet their burden to prove the validity of either the 2019 Agreement or the 2014 Agreement.[6] Granite/Kilu's motion for summary judgment was supported by the declaration of the former principal of Granite Peak and the declaration of Granite Peak's counsel, the California order for victim restitution and judgment, the foreign judgment, the 2014 and 2019 Agreements, excerpts from the deposition testimony of Karen and

---

[5] King County Superior Court No. 23-2-16069-0 SEA.
[6] Granite/Kilu expressly specified that it was not seeking to recover from Movotosa either individually or from his one-half interest in the Getty-Ojiru martial community.

Movotosa, and Nelson's obituary. The Ojirus opposed summary judgment dismissal and cross-moved for summary judgment, arguing that Granite/Kilu's claims were barred by res judicata, collateral estoppel, equitable estoppel, and the statute of limitations. But they did not provide any affidavits or other admissible evidence in support of these filings.

Following a hearing, the trial court granted Granite/Kilu's motion for summary judgment and denied the Ojirus' cross-motion for summary judgment dismissal. The order specified that Granite/Kilu is entitled to recover the California judgment from Karen's one-half interest in the Getty-Ojiru marital community and that the 2014 and 2019 Agreements are void and unenforceable as to this matter. The court denied the Ojirus' motion for reconsideration.

The Ojirus appeal.

II

The Ojirus argue that the trial court erred as a matter of law by granting Granite/Kilu's motion for summary judgment. We disagree.

We review summary judgment orders de novo and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

"The purpose of summary judgment is to avoid useless trials where there is no genuine factual issue to be decided." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022). The moving party has the initial burden of proving the

absence of an issue of material fact.  Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  When the moving party is a defendant who meets this initial showing, then the inquiry shifts to the plaintiff.  Young, 112 Wn.2d at 225.  In response to a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  CR 56(e).  If the nonmoving party fails to present admissible evidence demonstrating a genuine issue of material fact, it has not met its burden and summary judgment for the moving party is appropriate.  Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006).  "Summary judgment is appropriate for resolving pure questions of law as well."  Cornelius v. Wash. State Univ., 33 Wn. App. 2d 477, 483, 562 P.3d 792 (2025).

The Ojirus' assignments of error on appeal raise legal arguments and defenses that fail for the reasons below.  We address each in turn.

A

The Ojirus argue that summary judgment was improper because Granite/Kilu were not parties to the 2014 and 2019 Agreements and thus lacked standing to seek declaratory relief under the Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW. The Ojirus are incorrect.

The UDJA allows persons whose rights are affected by a contract to "have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."  RCW 7.24.020.  Granite/Kilu's financial interest in the judgment against Karen is affected by

5

the 2014 and 2019 Agreements, so it has standing to bring this declaratory judgment action.  See Casey v. Chapman, 123 Wn. App. 670, 678, 98 P.3d 1246 (2004) ("Parties whose financial interests are affected by the outcome of a declaratory judgment action have standing.").  No authority supports the Ojirus' assertion that the affected person must be a party to the contract to have standing.

B

The Ojirus argue that the summary judgment order must be vacated because the judgment against Karen was not a community debt for the benefit of the community.  They point out that the parties were not married at the time of the conduct and the judgment does not name the community estate.  The Ojirus are incorrect.

RCW 26.16.200 "generally shields spouses and the marital community from liability for each other's separate, premarital debts."  Nelson v. P.S.C., Inc., 2 Wn.3d 227, 230, 535 P.3d 418 (2023).  And "community property is generally not available to satisfy the separate debts of either spouse."  Haley v. Highland, 142 Wn.2d 135, 148, 12 P.3d 119 (2000).  But a tort victim may use the tortfeasor spouse's half interest in community personal property to satisfy a judgment based on a premarital tort, if the tortfeasor's separate property is insufficient to satisfy the claim.  Haley, 142 Wn.2d at 152.  Here, Karen testified that she will never have sufficient separate property to satisfy the foreign judgment.  The trial court did not err in concluding that Granite/Kilu may recover from Karen's half interest in the Getty-Ojiru marital community to satisfy the foreign judgment arising from her premarital conduct.

C

The Ojirus assert that genuine issues of fact exist as to whether the 2014 and 2019 Agreements were fraudulent. They contend that it was improper for the trial court to make credibility determinations during summary judgment proceedings concerning the agreements. It is true that "[t]he trial court does not weigh the evidence or assess witness credibility on a motion for summary judgment." Am. Exp. Centurion Bank v. Stratman, 172 Wn. App. 667, 676, 292 P.3d 128 (2012). But the Ojirus offered no evidence to dispute the invalidity and unenforceability of the agreements, so credibility is not at issue. See Volk v. DeMeerleer, 187 Wn.2d 241, 277, 386 P.3d 254 (2016) ("speculation and conclusory statements will not preclude summary judgment").

D

The Ojirus argue that summary judgment was improper because Granite/Kilu's claims are barred by the statute of limitations. They are incorrect. The UDJA does not have an explicit statute of limitations, but lawsuits under the UDJA must be brought within a reasonable time. Schreiner Farms, Inc. v. Am. Tower, Inc., 173 Wn. App. 154, 293 P.3d 407 (2013). "A party who obtains a judgment or order for restitution pursuant to a criminal judgment and sentence . . . may execute, garnish and/or have legal process issued upon the judgment or order any time within 10 years subsequent to the entry of the judgment." RCW 6.17.020(4)(a). The court may extend the judgment by an additional 10 years. RCW 6.17.020(3). Here, the judgment was originally entered on May 19, 2017, so Granite/Kilu filed this action well within the original ten-year period.

The Ojirus assert that the UDJA does not allow the court to make a determination on the collectability of a debt, but they provide no statutory or other legal authority for

this claim. They also point out that the statute of limitations for a claim under the Uniform Voidable Transactions Act (UVTA), ch. 19.40 RCW, has expired, but Granite/Kilu did not bring any claims under the UVTA.

E

Lastly, the Ojirus assert that the trial court violated Washington's contracts clause by declaring the purported 2019 and 2014 Agreements invalid and unenforceable as to Granite/Kilu and the foreign judgment. The contracts clause guarantees that "[n]o bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." WASH. CONST. art. I, § 23. But "only state legislation implicates the contract clause." Birkenwald Distrib. Co. v. Heublein, Inc., 55 Wn. App. 1, 6, 776 P.2d 721 (1989) (citing Tidal Oil Co. v. Flanagan, 263 U.S. 444, 451, 44 S. Ct. 197, 198, 68 L. Ed. 382 (1924)). The trial court's summary judgment order is not "legislation," so the contracts clause does not apply.

We affirm.

_____Mann, J._____

WE CONCUR:

_____Bui, J._____          _____Chung, J._____

8